Judgment reversed<br>and cause remanded.

FAIN and GRADY, JJ., concur.

---

**GREER, Appellee,**

v.

**DIRECTOR OF JOB AND FAMILY SERVICES, Appellant.**

[Cite as *Greer v. Dir. of Job & Family Servs.,* 171 Ohio App.3d 197, 2007-Ohio-1668.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 06–CA–38.

Decided April 6, 2007.

Jack P. Reynard Jr., for appellee.

Jim Petro, Attorney General, and Patria V. Hoskins, Assistant Attorney General, for appellant.

---

FAIN, Judge.

{¶ 1} Defendant-appellant, Director of Job and Family Services, appeals from a judgment of the Clark County Common Pleas Court, reversing a decision by the Unemployment Compensation Review Commission that plaintiff-appellee, Barbara Greer, is not entitled to unemployment compensation.

{¶ 2} Based upon our review of the record, we conclude that the trial court correctly reversed the decision of the commission, but erred by failing to remand this matter to the commission for redetermination. In our view, the ultimate question of Greer's entitlement to unemployment compensation turns upon a disputed issue of fact that was not resolved by a finding of the commission or its

hearing officer. The decision of the hearing officer, which was upheld without further analysis by the commission, was based upon his conclusion that Greer had a duty to restrain her adult son from threatening physical violence upon her employer and her employer's family, the breach of which duty constituted just cause for the termination of her employment. Because we agree with Greer that this conclusion is legally erroneous, we reverse the judgment of the trial court, but remand this matter to the commission for a determination of the crucial disputed issue of material fact: whether Greer encouraged her son to threaten physical violence.

I

{¶ 3} Greer was employed by J.M. Meadows Co., which was owned by Margaret Mason. Meadows operated a motel and restaurant. Greer was employed from November 1993 until October 14, 2002, when Mason discharged Greer.

{¶ 4} The events leading up to Greer's discharge began on the preceding day, when Kathleen Loney, Mason's daughter, took the work schedule that Greer had posted for the wait staff, whom Greer supervised, home with her. Loney took the schedule home to see if cuts in hours worked could be made, because the business's gross revenues were declining.

{¶ 5} Greer was upset that the posted schedule had been taken. Greer, Loney, and Mason testified at the hearing, and their accounts differed as to the extent to which Greer was upset, with Loney and Mason testifying that Greer was shouting and pounding on the counter. Greer denied that she had been that upset.

{¶ 6} Mason told Greer to go home for a few days and calm down. Mason and Loney testified that Greer repeatedly said, "No, I'm fired," or "No, you fired me," to which Mason repeatedly responded, "No, I'm just sending you home for a few days to calm down." Greer neither admitted nor denied this.

{¶ 7} In any event, before the end of the day, Greer ascertained that she was scheduled to work the next day, a Monday, and she came to the restaurant and worked a full shift. At the end of her shift, Mason told Greer that she was being discharged because of threats that had been made by Greer's son.

{¶ 8} Greer applied for unemployment compensation. Following a hearing, the hearing officer concluded that Greer had been terminated for just cause:

{¶ 9} "The facts presented above indicate claimant was angry that the schedule had been taken down even after being told anything. Claimant came to the facility for the schedule and was yelling until the owner told her to go home for a few days.

{¶ 10} "When claimant did leave, she told her son, a former employee, that she had been fired. The son then called the owner threatening harm to her.

{¶ 11} "It is the conclusion of the Hearing Officer claimant was discharged for just cause in connection with work under these circumstances. It was claimant's duty to restrain her son from threatening her employer."

{¶ 12} Greer appealed to the Unemployment Compensation Review Commission, contending, among other things, that the hearing officer erred when he found that she had a duty to restrain her son:

{¶ 13} "The reason for denial, as it was explained in the letter, was due to a supposed threat from my son, Dylan Greer. The conclusion by the Hearing Officer states that the reason I was discharged for just cause was 'claimant's duty to restrain her son from threatening her employer.' My son Dylan is a 22–year–old adult, living on his own, and is beyond a mother's capability to 'restrain,' and I cannot understand how his 'alleged' behavior could lead to my being fired. Where is the police statement or civil complaint against Dylan—where is the proof that he made these alleged threats? After the date of my unjust termination, my other son Daniel continued to work at the restaurant. Dylan provided Dan with transportation to and from work. Why would he be allowed to continue to come on the premises to deliver and pick up his brother if he were a 'threat?' "

{¶ 14} The Unemployment Compensation Review Commission disallowed Greer's request for review, without any written explanation.

{¶ 15} Greer appealed to the Clark County Common Pleas Court, pursuant to R.C. 4141.282. The trial court reversed the decision of the commission:

{¶ 16} "Here, the manifest weight of the evidence supports that Mason fired Greer in response to the actions of her adult son. By her statements, Mason planned to keep Greer on at the restaurant, but she decided to terminate her only after receiving calls from Greer's son. There is no showing that Greer, herself, instigated, encouraged, or even knew that her son made the threatening calls. Thus, Greer's fault in this matter was not sufficiently established to conclude that she was discharged for just cause.

{¶ 17} "Based on the foregoing, the Court finds that the administrative decision disallowing Greer unemployment benefits was unlawful, unreasonable, and against the manifest weight of the evidence. Accordingly, the decision is **REVERSED**." (Boldface sic.)

{¶ 18} From the judgment of the trial court, the director of the Ohio Department of Job and Family Services appeals.

## II

{¶ 19} The director's sole assignment of error is as follows:

{¶ 20} "The common pleas court erred in finding that the decision disallowing Greer's unemployment compensation benefits was unlawful, unreasonable, and against the manifest weight of the evidence."

{¶ 21} Both parties agree that the ultimate issue is whether Greer was discharged for unjust cause in connection with work, in which event she would be entitled to unemployment compensation under R.C. 4141.29(D)(2)(a). Both parties agree that an employee is considered to have been discharged for just cause when the employee, by her actions, has demonstrated an unreasonable disregard for her employer's best interests. *Kiikka v. Ohio Bur. of Emp. Servs.* (1985), 21 Ohio App.3d 168, 21 OBR 178, 486 N.E.2d 1233.

{¶ 22} The hearing officer was of the view that Greer had a duty to restrain her adult son from threatening her employer. We disagree.

{¶ 23} The trial court found that there was no evidence in the record to support a conclusion that Greer had encouraged her son to threaten her employer or was otherwise in complicity with her son. The director disagrees, contending that there is evidence in the record to support a finding that Greer was in complicity. We agree with the director. The following excerpts from the testimony of Margaret Mason would support a conclusion that Greer was in complicity with her son's threats of violence:

{¶ 24} "Q. Did she [Greer] seem to know that it [her son's threats] had happened that he had called?

{¶ 25} "A. She didn't * * * I don't remember what she answered. I says, I can't fight your family. I'm not going to do it.

{¶ 26} "Q. Okay. So if the son had not called and she showed up for work, she would have still had a job?

{¶ 27} "A. Probably, yes.

{¶ 28} "Q. Okay. Ms. Loney—

{¶ 29} "A. He had threatened me before too, so it's not the first time he threatened me. And it had nothing to do with her. It's just him and I because he worked for me and I let him go. And I wasn't going to put up with it.

{¶ 30} "Q. But you didn't tell her that he had called?

{¶ 31} "A. She knew he called, yes. I told her, yes.

{¶ 32} "Q. What was her reaction to that?

{¶ 33} "A. I don't remember.

{¶ 34} " * * *

{¶ 35} "Q. You had * * * you had stated that you thought that if she had not gotten her family involved that she probably would have still had a job; is that correct?

{¶ 36} "A. Right.

{¶ 37} "Q. And that * * * You had also stated that this wasn't the first time that she had gotten her family involved and—

{¶ 38} "HEARING OFFICER: I want to find out about that expression that you're using. What made you think she had gotten her family involved?

{¶ 39} "THE WITNESS: Her son called me and said, well, my son * * * let's see, my son will take care of it or something * * * and I * * * not exactly them words, but I don't remember what the words were, but my son will take care of things.

{¶ 40} "HEARING OFFICER: Okay. Ms. Loney, anything further?

{¶ 41} "THE WITNESS: And then she said, yeah, family is family and blood is blood, that's what she said. So I figured he was going to come up and start trouble.

{¶ 42} "HEARING OFFICER: Ms. Loney, anything further?

{¶ 43} "BY MS. LONEY:

{¶ 44} "Q. You also stated in your testimony that you had had problems with him before; is that correct?

{¶ 45} "A. Yes.

{¶ 46} "Q. Were you afraid of him?

{¶ 47} "A. Yes.

{¶ 48} "Q. Can you tell the Officer here why you were afraid of him?

{¶ 49} "A. Because he's got a bad temper and he's threatened me before and my grandson.

{¶ 50} "Q. So he * * * Was he an employee of yours before?

{¶ 51} "A. Yes."

{¶ 52} In our view, the above-quoted testimony, together with permissible inferences therefrom, could support a finding that Greer had encouraged her son to threaten Mason. Greer certainly never admitted that she had done anything to encourage her son in this regard.

{¶ 53} The problem is that the hearing officer made no finding of fact on this crucial point, having evidently concluded that Greer owed her employer a duty

not just to refrain from encouraging her son to threaten her employer, but to restrain her son from doing so on his own initiative. Neither this court nor the trial court can properly make a finding of fact on this disputed issue of fact. The trial court properly reversed the decision of the commission because that decision is based upon an erroneous conclusion of law—that Greer had a duty to restrain her son from threatening her employer.

{¶ 54} The trial court has authority to "remand the matter to the commission." R.C. 4141.282(H). In our view, this is what the trial court should have done in this cause. We have authority, upon an appeal to this court, "to render the judgment or final order that the trial court should have rendered." App.R. 12(B).

{¶ 55} Although we conclude that the trial court properly held that the decision by the commission is unlawful, we also conclude that the trial court erred by failing to remand this cause to the commission for a determination of the crucial issue of fact. To that limited extent, the director's sole assignment of error is sustained.

### III

{¶ 56} The director's sole assignment of error having been sustained to the limited extent indicated, the judgment of the trial court is reversed, and this matter is remanded to the commission for a determination whether Greer was complicit in the threats made by her son to her employer, in which event there was just cause for the termination of her employment. If, however, it should be determined that Greer was not complicit in those threats, then there was no just cause for the termination of her employment, and the commission should render a decision accordingly. Because we have found no procedural errors in the proceedings before the commission and its hearing officer, the commission is not required, upon remand, to hold a new evidentiary hearing, although it may do so if, in the exercise of its discretion, it should find it necessary or desirable to hold a new evidentiary hearing.

Judgment accordingly.

DONOVAN and WALTERS, JJ., concur.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.